# EXHIBIT A

1  **LAW OFFICES OF GARY R. CARLIN, P.C.**
   GARY R. CARLIN, CSBN: 44945
2  *gary@garycarlinlaw.com*
   LAWRENCE M. BOESCH, CSBN: 114658
3  *lawrence@garycarlinlaw.com*
   301 East Ocean Blvd., Suite 1550
4  Long Beach, California 90802
   Telephone: (562) 432-8933; Facsimile: (562) 435-1656
5
   Attorneys for Plaintiff JUAN CARLOS RUIZ
6

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

JUN 03 2021

BY _____
NICOLE O'DWYER, DEPUTY

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF SAN BERNARDINO

10

11  JUAN CARLOS RUIZ,                      Case No.:  CIV SB 2 1 1 5 5 8 0

12            Plaintiff;                   COMPLAINT FOR DAMAGES
                                             1.  VIOLATION OF LABOR C. §§
13      vs.                               1102.5, 6310 6400 ET SEQ AND 232.5;
                                          WRONGFUL TERMINATION IN
14  ANDERSEN WINDOWS, INC., a Minnesota   VIOLATION OF PUBLIC POLICY;
    Corporation formerly known as ANDERSEN     2.  VIOLATION OF LABOR C. §§
15  CORPORATION; ANDERSEN WINDOWS        1102.5, 6310 AND 232.5, AND
    AND DOORS, a Minnesota business organization, RETALIATION;
16  form unknown; ANDERSEN DISTRIBUTION,      3.  DISCRIMINATION BASED ON
    INC., a Delaware corporation with principal place MEDICAL CONDITION OR PHYSICAL
17  of business in Minnesota; ANDERSEN    DISABILITY;
    LOGISTICS, a Division of ANDERSEN         4.  RACIAL DISCRIMINATION;
18  WINDOWS, INC., business form unknown; and   5.  WRONGFUL TERMINATION
    DOES 1 through 10, inclusive;         (HARASSMENT; HOSTILE WORK
19                                        ENVIRONMENT);
            Defendants.                        6.  LABOR CODE VIOLATIONS
20                                        (DENIAL OF PREMIUMS FOR REST
                                          BREAKS AND MEAL BREAKS);
21                                             7.  LABOR CODE VIOLATIONS
                                          (Failure to Pay Wages on Time, to Pay
22                                        Wages Timely on Termination, to Provide
                                          Accurate Wage Statements, to Pay
23                                        Overtime Wages, to Provide Timely Wage
                                          Statements and To Maintain Accurate
24                                        Payroll Records)

25                                        **JURY TRIAL DEMANDED**

26      Plaintiff JUAN CARLOS RUIZ alleges as follows:

27                         GENERAL ALLEGATIONS

28      1.  Plaintiff is, and at all relevant times was, an adult male residing in San Bernardino

                                   -1-

                              COMPLAINT

1  County, California.

2      2. Plaintiff was employed by defendants in San Bernardino County, California, and the

3  defendants' conduct hereinafter alleged occurred in said County and State.

4      3. Plaintiff is informed and believes and on that basis alleges that defendant ANDERSEN

5  WINDOWS, INC. is and at all relevant times was, a corporation organized and existing under the

6  laws of the State of Minnesota, formerly known as ANDERSEN CORPORATION, that its principal

7  place of business was in Bayport, Minnesota, that it employed more than 50 persons and was an

8  employer defined in the California Fair Employment and Housing Act (FEHA).

9      4. Plaintiff is informed and believes and on that basis alleges that defendant ANDERSEN

10  WINDOWS AND DOORS is, and at all relevant times was, a Minnesota business organization, form

11  unknown, with principal place of business was in Bayport, Minnesota.

12      5. Plaintiff is informed and believes and on that basis alleges that defendant  ANDERSEN

13  DISTRIBUTION, INC. is and at all relevant times was, a corporation organized and existing under

14  the laws of the State of Delaware corporation with principal place of business in Minnesota, that it

15  employed more than 50 persons and was an employer defined in the California Fair Employment and

16  Housing Act (FEHA).

17      6. Plaintiff is informed and believes and on that basis alleges that defendant ANDERSEN

18  LOGISTICS is and at all relevant times was a Division of ANDERSEN WINDOWS, INC. with

19  business form unknown.

20      7. The true names and capacities of defendants named as DOES 1 through 10, inclusive, are

21  presently unknown to plaintiff. Plaintiff will amend this complaint, setting forth the true names and

22  capacities of these fictitious defendants when they are ascertained. Plaintiff is informed and believes

23  and on that basis alleges that each of the fictitious defendants has participated in the acts alleged in

24  this complaint to have been done by the named defendants.

25      8. Plaintiff is informed and believes and on that basis alleges that, at all relevant times, each

26  of defendants, whether named or fictitious, was the agent or employee of each of the other

27  defendants, and in doing the things alleged to have been done in the complaint, acted within the

28  scope of such agency or employment, or ratified the acts of the other.

-2-

COMPLAINT

9. In October 2014, defendants hired plaintiff to work in the position of Delivery Driver. During the five years and seven months of his employment, plaintiff performed his job duties in an exemplary manner, twice being given a $50.00 bonus for excellent customer service and once being acknowledged as Employee of the Month.

10. During the course of plaintiff's employment, he regularly reported safety hazards and documented them with photographs, brought them to the attention of defendants' managers and supervisors, and requested reasonable measures to address them, cure them, or make them less hazardous. These included, without limitation, assignments the completion of which would take ten (10) hours or more, deliveries to locations without docks, lack of pandemic protective equipment and other safety equipment, faulty packaging for merchandise being delivered, crowded parking lots, trailers with no steps or handle grasps, failure to coordinate time appointments for deliveries, tractors equipped with wrong kind of safety bars for gaining access to the rear of the cabs, and full and double-stacked trailers.

11. On or about September 24, 2018, Defendants' managers Tommy Rodriguez told Plaintiff and the other drivers to stop complaining to the Defendants' designated safety officer about safety issues. After Mr. Rodriguez was demoted later on that year, safety issues persisted.

12. In or about 2019, Defendants finally provided box trucks for the drivers to use, in order to allow their legal deliveries into and through residential areas, but this did not cure the safety problems with truck overloading, which continued and resulted in several injuries to drivers.

13. During the course of plaintiff's employment, on or about April 22, 2020, Plaintiff saw an Andersen storage trailer move forward and pulled the co-worker, Alfonso Moreno, who was then injured on the job (hereinafter, "Mr. Moreno's accident). Plaintiff was informed and believed that the reason the trailer moved forward and away from his co-worker was that its brakes needed maintenance and had not been adequately serviced, causing the trailer to malfunction.

14. In or about mid-May 2020, an official from the California Workers' Compensation Division of Employment Development Department called Plaintiff to get details from him regarding Mr. Moreno's injury and how it happened. Plaintiff accurately told the official how the accident happened, and that this particular trailer had moved many times before, and that his co-workers and

COMPLAINT

1  he had complained to Defendant's managers about its faulty brakes previously.

2    15. Thereafter, in or about late May 2020, Defendants' General Warehouse Manager Steve

3  Pete and their Human Resources manager Ms. Jahara called Plaintiff to discuss Mr. Moreno's

4  accident. When Plaintiff reaffirmed his account of what he saw, including the trailer's movement.

5  They disagreed as to whether the trailer had been hooked up to a tractor at the time of Mr. Moreno's

6  injury. Plaintiff asserted that the trailer had not been hooked to an tractor, and that their videotapes

7  must have related to a different time.  He reiterated that the problem had been with faulty brakes on

8  the trailer which allowed it to move.

9    16. Mr. Pete and Ms. Jahara claimed that the trailer couldn't move, because they had tried

10  moving a trailer like that in Arizona and it wouldn't move.  Plaintiff knew that other employees had

11  seen the trailer move on other occasions.  Mr. Pete and Ms. Jahara asked him to change his account

12  of how Mr. Moreno's accident happened, but Plaintiff refused to do so, on the grounds that his

13  statement was accurate.

14    17. On or about June 4, 2020, Defendants terminated Plaintiff's employment with their

15  companies, in a telephone call from Defendants' Senior Manager of Corporate Transportation, Mike

16  Thompson, General Warehouse Manager Steve Pete, and Human Resources manager Ms. Jahara.

17  They erroneously accused him of violating the company's Code of Conduct by refusing to change his

18  account of how Mr. Moreno's accident happened. They accused him of telling a falsehood as to the

19  reason and basis for the accident.

20    18. On or about June 4, 2020, Defendants' Human Resources Manager, Cassie Hanson, sent

21  Plaintiff a letter confirming the termination and the pretenses under which it was effected. A true and

22  correct copy thereof is attached hereto, marked Exhibit "A," and made a part hereof by this

23  reference.

24    19. The true reason for the termination was that Defendants could not get Plaintiff to give

25  false testimony about the things he witnessed regarding Mr. Moreno's accident.

26    20. On March 26, 2021, plaintiff filed with the Department of Fair Employment and Housing

27  (DFEH) a complaint charging defendants with discrimination in violation of the FEHA. On March

28  26, 2021, DFEH issued to plaintiff a right-to-sue letter.

-4-

# FIRST CAUSE OF ACTION

VIOLATION OF LABOR C. §§ 1102.5, 6310, 6400 ET SEQ AND 232.5, GOV. C.§ 12940(h);

WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

Plaintiff Against All Defendants

21.  Plaintiff incorporates each allegation set forth in paragraphs 1 through 20.

22.  In acting as herein alleged, Defendants breached  Labor C. §§ 6310 and 6400 et seq (right to work in a safe and healthful workplace) and violated the public policy behind them, to prevent retaliation against those who in good faith report working conditions they believe to be unsafe, to aid the reporting of actual safety violations and to permit reasonably based suspicions of illegal activity.

23.  In acting as herein alleged, Defendants also breached Labor C. § 1102.5, particularly subdiv. (b), and violated the public policy behind it, to safeguard and protect employees from retaliation for disclosing an employer's violation of state or federal statutes or local, state or federal regulations to one or more of the following: a) a governmental agency, or 2) an employee with authority over the complaining employee, or 3) an employee with authority to investigate or correct the alleged violation.

24.  In acting as herein alleged, Defendants also breached and violated the public policy behind Labor C. § 1102.5 to safeguard and protect employees from retaliation for an employer's belief that the employee disclosed or may disclose the employer's violation of state or federal statutes or local, state or federal regulations to one or more of the following: a) a governmental agency, or 2) an employee with authority over the complaining employee, or 3) an employee with authority to investigate or correct the alleged violation.

25.  In acting as herein alleged, Defendants also breached and violated the public policy behind Labor C. § 1102.5 to safeguard and protect employees from retaliation for providing information to, or testifying before, any public body conducting an investigation, hearing or inquiry.

26.  In acting as herein alleged, Defendants also breached and violated the public policy behind Lab. C. § 232.5, which prohibits disciplining or discharging an employee for disclosing information about the employer's working conditions, which policy is to promote unfettered

1  monitoring and enforcement of safe conditions without fear of retaliation, so that working conditions

2  will comply with State Health and Safety Code, OSHA regulations, and other state, federal and local

3  ordinances and regulations, in circumstances in which the authorities cannot regularly monitor and

4  depend upon independent, reliable, competent sources.

5      27.  The above-described conduct of Defendants constitutes wrongful termination of Plaintiff

6  in violation of FEHA (Gov. C. § 12940(h)) and the public policy embodied in it and Labor C. §§

7  6310, 1102.5 (including on account of their belief that Plaintiff disclosed such information to a

8  governmental agency), 6400 et seq and 232.5, and the public policy embodied in it.

9      28.  As a result of Defendants' wrongful termination of him, Plaintiff has suffered and

10  continues to suffer damages, in the form of lost wages and other employment benefits, and severe

11  emotional and physical distress, the exact amount of which will be proven at trial.

12      29.  Defendants and each of them acted for the purpose of causing Plaintiff to suffer financial

13  loss and severe emotional distress and physical distress and are guilty of oppression and malice,

14  justifying an award of exemplary and punitive damages.

15                    SECOND CAUSE OF ACTION

16                          RETALIATION

17                    Plaintiff Against All Defendants

18      30.  Plaintiff incorporates each allegation set forth in paragraphs 1 through 29.

19      31.  Plaintiff opposed Defendants' wrongful acts in seeking to get him to testify differently

20  than the true account he had given the Workers' Compensation Department's official about Mr.

21  Moreno's accident, and to lie about what he has seen and concluded from his observations there, by

22  directly rejecting the Defendants' managers' reproaches and solicitations for him to revise his

23  statement to assert facts that were untrue about how it happened and why it happened, directly to

24  Defendants' General Warehouse Manager Steve Pete and their Human Resources manager Ms.

25  Jahara.

26      32.  In violation of Labor C. §§ 6310(b), 1102.5, 6400 et seq and 232.5, Defendants

27  discriminated against and discharged Plaintiff for complaining about their unsafe work conditions

28  and practices and on account of their belief that Plaintiff disclosed such information to a

-6-

1  governmental agency. Defendants' termination of Plaintiff's employment was in retaliation of his
2  rejection of the Defendants' solicitations for him to revise his statement to assert facts that were
3  untrue.

4      33.  In retaliation for Plaintiff's insistence on the accuracy of his statement and his
5  unwillingness to change his statement to say something different about Mr. Moreno's accident than
6  what he actually saw, on or about June 4, 2020, Defendants terminated Plaintiff's employment in
7  violation of public policy against giving false testimony under penalty of perjury.

8      34.  The conduct of defendants violated the California Fair Employment and Housing Act
9  (FEHA), in that plaintiff refused to give testimony or otherwise assist defendants in proceedings
10  regarding another employee's disability claim, as prohibited in Gov. C. § 12940(h) and 2 CCR §
11  11021(a), even as to the employers' suspicion of Plaintiff's reporting, including reasonably based
12  suspicions of illegal activity.

13      35.  The conduct of defendants also violated FEHA on account of its motive to retaliate
14  against him for acting as a whistleblower on safety hazards on the job, that would have affected
15  defendants' liability rating for workers' compensation insurance, and that would have become
16  evidence supporting claims for violations of the Occupational Safety and Health Act (OSHA).

17      36.  As a result of defendants' discriminatory actions against him, plaintiff has suffered and
18  continues to suffer damages, in the form of lost wages and other employment benefits, and severe
19  emotional and physical distress, the exact amount of which will be proven at trial.

20      37.  Defendants and each of them acted for the purpose of causing plaintiff to suffer financial
21  loss and severe emotional distress and are guilty of oppression and malice, justifying an award of
22  exemplary and punitive damages.

23                          THIRD CAUSE OF ACTION

24      DISCRIMINATION BASED ON MEDICAL CONDITION OR PHYSICAL DISABILITY

25                          Plaintiff Against All Defendants

26      38.  Plaintiff incorporates each allegation set forth in paragraphs 1 through 37.

27      39.  At all times relevant herein, Government Code § 12940(m) was in full force and effect,
28  and was binding upon Defendants.  Said section provides that it is unlawful for an employer to fail to

-7-

1    make reasonable accommodations for the known disability of an employee.

2        40.  At all relevant times herein mentioned, Defendants were Plaintiff's employer and

3    Plaintiff was Defendants' employee as defined under California Government Code § 12940(a).

4        41. In or about January 2015, Plaintiff had a medical condition related to an injury to his foot

5    that occurred within the course and scope of his employment.  He filed a disability claim with the

6    **Department of Industrial Relations** within the meaning of Gov. C. § 12940(a) related to disability

7    and was on workers' compensation for a period over a year.

8        42. As Plaintiff was being treated, in or about April 2016, Plaintiff was prepared and capable

9    of working for Defendants on limited duties that would have been regular for his condition, on the

10   grounds that he was not 100% recovered yet. In doing so, Defendants failed and refused to

11   accommodate his partial disability by employing him in those limited duties.

12       43.  Plaintiff made the Defendants aware of the condition and the consequent partial physical

13   disability related both to it and to his treatment for it.

14       43.  At all times mentioned herein, Plaintiff was willing and able to perform the essential job

15   duties of his position or other suitable positions if reasonable accommodation had been made by

16   Defendants.  At no time would the performance of the functions of the employment position, **with a**

17   **reasonable accommodation for Plaintiff's disability**, have been a danger to Plaintiff's or any other

18   person's health or safety, nor would it have created an undue hardship to the operation of

19   Defendants' business.

20       44. Plaintiff requested reasonable accommodations for the medical condition and physical

21   disability but Defendants claimed there was no light duty available, although later they had provided

22   an accommodation for light duty assignment for another driver who was given a helper to unload his

23   shipments for a period of time.

24       45.  Under FEHA, Gov. C. § 12926(i)(1), Defendants had the duty to provide reasonable

25   accommodations to employees with health impairments related to or associated with his recuperation

26   from an on-the-job injury that resulted in his partial disability, for which the person has been

27   rehabilitated or cured based on competent medical evidence.

28   ///

-8-

COMPLAINT

46. In violation and breach of their duty under FEHA, particularly Gov. C. § 12940(m)(2), Defendants failed to reasonably accommodate his disability, and instead of interacting about accommodations, Defendants retaliated against Plaintiff because of his disabilities and/or his requests for accommodation for his disabilities. In particular, Defendants failed and refused to provide reasonable accommodations to Plaintiff on account of and in consideration of his medical condition or physical disability.

47. Instead, and in breach of their duty to provide reasonable accommodations for Plaintiff, Defendants did the following:

a) Regularly overloaded his trailers and his routes, so that he had to make exhausting runs for eleven (11) or more hours per day (as documented in the attached e-mail exchange of June 15, 2017, marked Exhibit B, and made a part hereof by this reference),

b) Declined to provide occasional relief from heavy transporting, and

c) Failed to give him occasional assistance in loading or unloading items or merchandise onto or from delivery vehicles.

48. In addition, in further breach of their duties under FEHA, Gov. C. § 12926(i)(1), Defendants routinely denied Plaintiff the regular rest breaks and complete meal breaks required under the Labor Code (as further alleged herein below).

49. As a result of defendants' discriminatory actions against him, Plaintiff has suffered and continues to suffer damages, in the form of lost wages and other employment benefits, and severe emotional and physical distress, the exact amount of which will be proven at trial.

50. As a further result of the wrongful conduct of Defendants, and each of them, Plaintiff has suffered work-related stress, anxiety, emotional distress, humiliation, mental pain and anguish, physical injuries, and physical sickness, all to Plaintiff's damage in an amount to be determined at trial according to proof.

51. Defendants and each of them acted for the purpose of causing plaintiff to suffer financial loss and severe emotional distress and are guilty of oppression and malice, justifying an award of exemplary and punitive damages.

52. Plaintiff is entitled to his attorney's fees and expenses pursuant to Gov. C. § 12965(b).

COMPLAINT

# FOURTH CAUSE OF ACTION

## RACIAL AND COLOR DISCRIMINATION

### Plaintiff Against All Defendants

53. Plaintiff incorporates each allegation set forth in paragraphs 1 through 52.

54. At all times material hereto, Plaintiff is and was a United States citizen of Hispanic race and dark complexion, as was known by the Defendants.

55. As a member of a minority group, Plaintiff was protected under 42 U.S.C. § 1981 and FEHA, Gov. C. § 12940(j)(1), both individually and in association with others of his race and color.

56. In violation and breach of their duty under FEHA, despite their actual or constructive knowledge of Plaintiff's race and color, Defendants discriminated against Plaintiff on account of his race or color.

57. Defendants' managers, at all times material hereto, regularly discriminated against him, as they did with all Fontana-based drivers, who were primarily Hispanic, as compared to the assignments given to Sacramento-based drivers, who were predominantly white and Black. This includes giving him assignments that were more menial, problematic, assured to cause difficulty nearly insurmountable, and repulsive than the assignments given to nonHispanic, white or Caucasian drivers, as, for example, with respect to the following:

a) Requiring him to go into residential areas with 53-foot trailers (unsafe and illegal, for which he was issued a ticket by the police, that Defendants refused to pay on his behalf), when Sacramento-based drivers were not required to do so;

b) Failure to adjust the assignment of route-delivery workload, so that Southern California deliveries could be managed reasonably in comparison to the lighter traffic conditions in Sacramento;

c) Requiring him to make deliveries with insufficient strapping to secure heavy merchandise (for which Defendants' managers refused to accommodate him either with giving the correct strapping for each 500 pounds of an item's weight or with providing a number he could use to contact corporate headquarters regarding safety issues), as if Plaintiff and the other Fontana-based drivers were superhuman who could lift and manage various

-10-

COMPLAINT

heavy items without threat of injury;

d) Intentionally loading the trailers for Fontana so that he and the other drivers would have to move merchandise to get to the articles scheduled to be delivered first, as the Sacramento workers would arrange the merchandise for shipping to Fontana only considering cost-effectiveness, not considering the strain of arranging the deliveries on the Fontana drivers, who, including Plaintiff were nevertheless expected to finish their deliveries within a reasonable time;

e) Intentionally allowing those workers packing the trailers from Sacramento in a hazardous manner that made for safety hazards from article or merchandise slippage and falling, although Plaintiff and others complained to Tommy Rodriguez and other supervisors in Sacramento;

f) Failing and refusing to get equipment for him to move articles and merchandise safely, and not managing the delivery schedule such that the trucks had room to carry the moving equipment, as a lack of consideration;

g) Providing better safety precautions for the workers in Sacramento, that enabled the securing of trailers by hitching to a stationary post, rather than the arrangement in Fontana for workers to take their chances with moving trailers that didn't have the facility to hitch securely to a stationary post; and

h) Imposing on him to shorten his rest or meal breaks, including training by four (4) different trainers (starting with a trainer named Kirk in Sacramento), who told Plaintiff that drivers for Defendants would not take breaks other than meals "sometime within the eight (8) hours" of his shift, as would have been expected of slaves on the plantation.

58. In further discrimination against Plaintiff on account of association with the predominantly Mexican-American drivers in Fontana, Defendants terminated his employment when he complained of the intolerable conditions that affected the other drivers of his same race or color, in part because of his own race and color and in part because of his association with other minority workers of nonCaucasian race and nonwhite color, including, without limitation, Alfonso Moreno and Omar Doe, whose employment was terminated in apparent retaliation for having made a claim

-11-

COMPLAINT

1   on worker's compensation insurance.

2       59. As a result of defendants' discriminatory actions against him, Plaintiff has suffered and

3   continues to suffer damages, in the form of lost wages and other employment benefits, and severe

4   emotional and physical distress, the exact amount of which will be proven at trial.

5       60. As a further result of the wrongful conduct of Defendants, and each of them, Plaintiff has

6   suffered work-related stress, anxiety, emotional distress, humiliation, mental pain and anguish,

7   physical injuries, and physical sickness, all to Plaintiff's damage in an amount to be determined at

8   trial according to proof.

9       61. Defendants and each of them acted for the purpose of causing plaintiff to suffer financial

10   loss and severe emotional distress and are guilty of oppression and malice, justifying an award of

11   exemplary and punitive damages.

12       62. Plaintiff is entitled to his attorney's fees and expenses pursuant to Gov. C. § 12965(b).

13   

14                   FIFTH CAUSE OF ACTION

15   WRONGFUL TERMINATION (HARASSMENT; HOSTILE WORK ENVIRONMENT)

16                   Plaintiff Against All Defendants

17       63. Plaintiff incorporates each allegation set forth in paragraphs 1 through 62.

18       64. During the course of plaintiff's employment, Plaintiff suffered grief, anxiety, stress and

19   depression caused by the severe, intolerable and pervasive conditions and the hostile environment at

20   Defendants' employment, caused by the regular pressure for him to violate public policy by doing

21   such illegal things as taking 53-foot trailers through residential neighborhoods, by the discrimination

22   against him for his medical condition and physical disability, and because of the racial discrimination

23   that he was caused to suffer at the Defendants' employment.

24       65. At all times material hereto, in violation of Gov. C. § 12940(k), Defendants failed to take

25   reasonable steps to prevent the harassment, discrimination and retaliation herein alleged. In

26   particular,

27           a) Plaintiff was an employee of Defendants;

28           b) He was subjected to harassment, discrimination, and retaliation in the course of and at

1    the termination of his employment;

2         c) Defendants failed to take all reasonable steps to prevent the harassment,

3    discrimination, and retaliation;

4         d) Plaintiff was harmed thereby; and

5         e) Defendants' failure to take all reasonable steps to prevent the harassment,

6    discrimination, and retaliation was a substantial factor in causing Plaintiff's harm.

7    66. As a result of defendants' failure to take all reasonable steps to prevent the harassment,

8    discrimination, and retaliation, Plaintiff has suffered and continues to suffer damages, in the form of

9    lost wages and other employment benefits, and severe emotional and physical distress, the exact

10   amount of which will be proven at trial.

11   67. As a further result of the wrongful conduct of Defendants, and each of them, Plaintiff has

12   suffered work-related stress, anxiety, emotional distress, humiliation, mental pain and anguish,

13   physical injuries, and physical sickness, all to Plaintiff's damage in an amount to be determined at

14   trial according to proof.

15   68. Defendants and each of them acted for the purpose of causing plaintiff to suffer financial

16   loss and severe emotional distress and are guilty of oppression and malice, justifying an award of

17   exemplary and punitive damages.

18   69. Plaintiff is entitled to his attorney's fees and expenses pursuant to Gov. C. § 12965(b).

19

20                          SIXTH CAUSE OF ACTION

21              LABOR CODE VIOLATIONS (DENIAL OF PREMIUMS

22                    FOR REST BREAKS AND MEAL BREAKS)

23                        Plaintiff Against All Defendants

24   70. Plaintiff incorporates each allegation set forth in paragraphs 1 through 69.

25   71. During the course of Plaintiff's employment, Plaintiff was required by the Defendants'

26   managers and authorized trainers (Ramiro Nagallanez and Kirk) to work through and within his

27   lunch hour despite having been required to clock out for that time. He was never allowed a rest break

28   (as trainer Nagallanez and corporate officers on his hiring told them that Defendants' drivers do not

-13-

take breaks).

72. In violation of Defendants' responsibility to ensure that employees like Plaintiff get a work-free meal period when they work more than five hours a day and a second meal period of at least 30 minutes if they work more than 10 hours in a day  (Lab. C. § 512(a)), Defendants demanded and required Plaintiff and similarly situated current and past employees of the above-referenced companies (hereinafter, "the Aggrieved Parties") to work without meal breaks at all times material to this action until some time in 2017.  At the insistence of his trainers, even then and after that, Plaintiff was regularly not allowed to take his lunch until after the 6th hour and frequently until the end of the 7th hour.

73. The right to a meal period is a nonwaivable statutory right in California.  Under Lab. C. § 226.7(c) and 8 CCR §§ 11010-1150, and 11160, Defendant is required to pay Plaintiff one additional hour of pay at his regular rate for each work day when the meal period was not provided, which Defendants have not paid to Plaintiff.

74. In addition, federal law (29 CFR § 785.18) requires that employers like Defendants given rest breaks, and California law (Lab. C. § 226.7(d) and 8 CCR §§ 11010-11150) require that employers like Defendants allow their workers like Plaintiff a ten minute rest break every 4 hours worked. Defendants never allowed Plaintiff to take a rest break. The failure to allow for rest breaks subjects employers like Defendants under Lab. C. § 226.7( c ) to a payment of a penalty in the form of a premium of one additional hour of pay at the employee's regular rate for each day that a rest period was not provided. Defendants have not paid this premium to Plaintiff.

75. Plaintiff has been damaged as a result of Defendants' failure to pay for missed meal period, meal period required to be taken later than the federal law permits, and the failure to pay Plaintiff premiums for missed rest breaks, all in an amount not presently ascertained. Plaintiff will seek leave of the Court to amend this complaint to state the amount thereof when ascertained or upon proof at trial.

76. Under California Labor Code §§ 226.7 and 512(a) Plaintiff and the Aggrieved Parties are entitled to Unpaid Meal Period Premiums; under California Labor Code § 226.7 Plaintiff and the Aggrieved Parties are entitled to Unpaid Rest Period Premiums

-14-

SEVENTH CAUSE OF ACTION

LABOR CODE VIOLATIONS (Failure to Pay Wages on Time, to Pay Wages Timely on Termination, to Provide Accurate Wage Statements, to Pay Overtime Wages, to Provide Timely Wage Statements and To Maintain Accurate Payroll Records)

Plaintiff Against All Defendants

77. Plaintiff incorporates each allegation set forth in paragraphs 1 through 76.

78. Defendants also violated Plaintiff's rights under California Labor Code §§ 204 and 558 by failing to pay his wages on time, under California Labor Code §§ 201, 202 and 203 by not paying wages timely on termination, under California Labor Code § 226(a) and 226.3 by not providing accurate wage statements, under California Labor Code §§ 510 by failing to pay overtime, under California Labor Code §§ 226, 226.3, and 1198 by not providing accurate wage that included, among other things, the hours worked by Plaintiff and Aggrieved Employees, net and gross pay, under California Labor Code §§ 226(a) and 226.3 by not providing timely wage statements, and under California Labor Code §§ 1174 and 1198 and Industrial Wage Orders for failing to maintain accurate payroll records, all related to the following alleged occurrences, practices or policies of Defendants:

A.) Requiring Plaintiff and the Aggrieved to use a PeopleNet system to log in on his own time to the expense of 7 to 10 minutes a day, still spending about 2 minutes a day of his time each day to log in when shifting to a OmniTrack system, without getting paid for any of this time; and

B.) Requiring Plaintiff and the other Aggrieved Parties to take safety on-line training sessions and take examinations on the content on their own time, on facilities of their own arrangement, without paying them for the time spent doing so or compensating them for use of non-company facilities.

79. The specific provisions of the California Labor Code allegedly violated by Defendant include, but are not limited to, the following: 98.6, 201, 202, 203, 204, 210, 218.6, 226, 226.3, 226.7, 256, 510, 512, 551, 552, 558, 1102.5, 1174, 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, and 2698, et seq. and applicable IWC Wage Orders.

80. Defendants' conduct herein alleged caused Plaintiff and the Aggrieved Parties damages

-15-

1  in lost earnings, wages and benefits, all in an amount not presently ascertained. Plaintiff will seek

2  leave of the Court to amend this complaint to state the amount thereof when ascertained or upon

3  proof at trial.

4      81.  Defendants' conduct herein alleged subjects them to penalties under the Labor Code,

5  including, without limitation, waiting time penalties for violating California Labor Code §§ 201, 202

6  and 203 by failing to pay all wages to Plaintiff and to Aggrieved Employees at the end of their

7  employment, and penalties under California Labor Code §§ 226, 226.3, and 1198 to provide timely,

8  accurate wage statements during their employment.

9      82. Defendants have violated Business & Professions Code §§17200 et seq. have been

10  violated by their conduct herein above alleged.

11      83.  Plaintiff intends to amend this complaint to allege a cause of action as Private Attorney

12  General (PAGA, Labor Code § 2699 et seq) to recover wages and penalties as provided by California

13  law for the damages, penalties and attorney's fees incurred in the causes of action alleged above.

14  WHEREFORE, plaintiff prays:

15      1.  For compensatory damages according to proof and prejudgment interest thereon to the

16  extent allowable by law;

17      2.  For penalties as provided by law;

18      3.  For exemplary and punitive damages according to proof;

19      4.  For attorney fees on the second, third and fourth causes of action;

20      5.  For costs of suit; and

21      6.  For such other and further relief as the court may deem proper.

22  Dated: June 2, 2021                    LAW OFFICES OF GARY R. CARLIN, P.C.

23

24

25  By _____
    Gary R. Carlin
26  Lawrence M. Boesch
    Attorneys for Plaintiff JUAN CARLOS RUIZ

27

28

-16-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "A"**

-17-

COMPLAINT

# EXHIBIT A

**Andersen.** C O R P O R A T I O N

June 4, 2020

Mr. Juan Carlos Ruiz

Dear Carlos:

We regret to inform you that your employment with Andersen Logistics will terminate effective June 4, 2020 due to violation of the Code of Conduct.

This letter provides you with some basic information regarding the termination of your employment.

<u>Pay and PTO</u>:  You will be paid at your current base pay rate for all hours worked through the June 4, 2020. You will be paid for any paid time off which was earned but not used as of the June 4, 2020. The base compensation and the paid time off will be paid upon termination.

<u>Health Benefits and COBRA</u>:  If you are currently enrolled in medical/dental and/or vision coverage, your coverage will terminate at the end of the month in which your employment ends.  You may be eligible to continue health and/or life insurance under the Company's plans pursuant to state and federal benefits continuation laws.  Information regarding COBRA will be sent to you under separate cover within the next two weeks.   If you have any questions regarding your COBRA benefits, please call the ABC at 855-374-8822.

<u>Property</u>:  You are obligated to return to the Company all property of the Company which is now or has ever been in your possession or control.  We will send you via US Mail or UPS any personal property that you may have left at your workstation.  You will not be allowed to come back on company property for any reason.

<u>Expenses</u>.  If you receive bills for any outstanding business expenses after the June 4, 2020, please submit these business expense reports on a manual form with supporting documentation to your HR contact within thirty days after June 4, 2020. Any appropriate expenses submitted by this deadline will be reimbursed according to the Company's normal policies and practices.  You will not be reimbursed for any expenses submitted after this date.

<u>Continuing Obligations to the Company</u>. Following the termination of your employment, you are still bound by the obligations regarding confidentiality, inventions, competitive activities and other provisions of Company policies and the Employment Agreement you signed with the Company that apply after the termination of your employment.

If you have any questions about this letter, please call me at 651-264-2598.

Best regards,

Cassie Hanson
Human Resources Manager





# EXHIBIT B

 Gmail

---

**Bringing back product and suggestions to improve**
2 messages

---

**Juan Ruiz** <ruizspiecez2@gmail.com>                                                                 Thu, Jun 15, 2017 at 11:12 AM
To: "Rodriguez, Tommy" <Tommy.Rodriguez@andersenlogistics.com>
Cc: "Cline, Brandy" <Brandy.Cline@andersencorp.com>

Dear Tommy,

This is in response to your texts from June 14, 2017 questioning why I brought back product this week and where you request suggestions on how to fix the problem so it doesn't continue happening. We have had multiple conversations about this topic, both one on one and in driver meetings, and although I've given my suggestions before, changes have not yet occurred. This includes a conversation with Brian several months ago stating that things were going to change when you came back from vacation. Below are my suggestions on how to fix the problems and issues which I encounter on my routes daily, if not very regularly, and what I encountered this week so far.

SUGGESTIONS:
1) I'm over routed daily. I shouldn't be routed for 11+ hours on any given day. I'm delivering in one of the most, if not the most congested city in the U.S. and bumper to bumper traffic is not being considered.
2) When travel time is considered, it is based at 65 mph when trucks are only allowed to travel 55 mph max.
3) Time allowed for deliveries is grossly underestimated, especially at job site deliveries. Not to mention when zero minutes are allowed for deliveries. I regularly encounter having to deliver a hundred or more items, without sufficient help, and only given 45 minutes to do so. These deliveries often take 1 1/2+ hours.
4) At times my route may have a 7:00 am scheduled delivery to customers which don't open until 1+ hours later. This is not only wasted time but now I have to squeeze them in later on my route.
5) Routes are being routed backwards. Efficient delivery routes should consist of the following:
  a) First delivery scheduled should be the furthest away from the yard. This will avoid some traffic by passing through L.A. at the earliest possible hour. Scheduling the last delivery closes to the yard will avoid traveling long distances, often from the other side of L.A., in bumper to bumper traffic.
  b) Routes are being mixed. A route should be limited to a certain geographic area only, on any given day. For example, areas in Northern L.A. county, Burbank, Northridge, Pacoima or Oxnard shouldn't be scheduled on the same day with Western or Southern L.A. county, Marina Del Rey, San Pedro or Orange County deliveries. I've had several North Hollywood to Marina Del Rey to the yard routes. That type of scheduling has me traveling through downtown L.A. during rush hour, then crossing L.A. again to get to the yard. FYI downtown should be avoided whenever possible regardless of the hour.
6) Other examples of things I encountered that can cause delays are:
  a) Sometimes deliveries are added to my route without reflecting them on my route sheet. I simply find them in the truck to be delivered on that day without an adjustment to the schedule.
  b) Deliveries not made on any previous day(s), for any given reason, are squeezed into the next possible delivery day.

THIS WEEKS ISSUES:
1) Monday's first delivery - Horizon, arrival time 7:00, departure time 7:00. Zero delivery time allowed.
2) Tuesday's route - Beverly Hills Job Site, arrival time 12:36, departure time 12:36. Again zero delivery time allowed.
3) Wednesday's trailer arrived with flat tire. I left the yard at 6:40 instead of 5:00.
4) This is the first week I've ever received a schedule showing less than 11 hours on my route sheet. As you can see from 1 and 2 above, it was incorrect.

Tommy, I'm constantly trying to communicate with you when I encounter a problem. This week isn't any different. You've known of all the issues I've had so far this week. So the fact that you're asking me why I've brought back product and that it needs to stop, is frankly quite unsettling to me.

I try to call you to speed things up when there is an issue, but a great majority of the time you don't answer. So I'm forced to text you, but many times I don't get an answer until several hours later. I understand that you may prefer to text, but I can not text while I'm driving, so a simple telephone call will make things run smoother.

In a perfect world with no traffic, no hold ups, no truck/trailer problems, no customer delays, reasonable amount of help and no scheduling errors, maybe this type of routing will work. Then I could understand and expect the questioning, but that's not reality. I'm constantly pushing my maximum daily work hours to try to keep with the schedule. Then after a full 13+ hour day of work, I feel compelled to write you this detailed letter to explain myself and give you a few suggestions. It's truly quite exhausting.

I hope that my suggestions will all be taken into consideration and my reasons be understood.

Thank you,
J. Carlos Ruiz

---

**Rodriguez, Tommy** <Tommy.Rodriguez@andersenlogistics.com>                               Thu, Jun 15, 2017 at 12:21 PM
To: Juan Ruiz <ruizspiecez2@gmail.com>
Cc: "Thompson, Mike" <Mike.Thompson@andersencorp.com>, "Moe, Peter" <Peter.Moe@andersencorp.com>, "Scott, Brian" <Brian.Scott@andersencorp.com>, "Marko, Aaron" <Aaron.Marko@andersencorp.com>

Hi Carlos,

Thank you very much for your response and all the suggestions listed below. I am forwarding this email to our Corporate Transportation Team so they can see you concerns and help me responses, plan of action or with any explanations regarding hours of work and regulations. We try to keep the route hours under 10.5 or as close to that as possible, but this is not a rule or regulation. We do this so the route could be accomplished and all deliveries are fulfilled with no product returning to the yard. Regarding hours of regulation, you have 14hrs for daily use before you have to use your 2 hours exception once a week or 16 hours once a week. We don't ever route to that extreme.

As a manager, I rely on you to be able to resolve a lot of the issues you encounter with traffic and deliveries throughout your day yourself. For routing and planning issues continue to let me know about these so I can continue to communicate with Trans Ops. On the other hand, I am here to help and I will respond to your calls or texts as quickly as I can. I am not always sitting by the phone or able to answer my cell.

Remember you are not to be on the phone while driving. Call me or text me while stopped at a delivery or parked in a safe location. You don't want to put yourself or those around you in harm's way.

Be Safe,


Peter, Aaron and Mike,


Please see below the concerns and suggestions Carlos listed below; and help me respond.


Thank you,


*Tommy Rodriguez*

*Operations Manager/Fleet Manager*



*Tel. 916-383-2900 ext. 1011*

*Fax. 651-275-6819*


*email*

*tommy.rodriguez@andersenlogistics.com*

[Quoted text hidden]